**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| **SCOTT KLAPHEKE**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**ONCOSURE TESTING, LLC**, a Florida<br>corporation,<br><br>Defendant. | **CIVIL ACTION**<br><br>**Case No.  0:25-cv-61576**<br><br>**Judge:**<br><br>**Mag. Judge:** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, **SCOTT KLAPHEKE** ("KLAPHEKE" or "Plaintiff"), by and through undersigned counsel, and states the following for his Complaint:

## INTRODUCTION

1. This is an action brought under the federal False Claims Act (FCA) and Florida's Private Whistleblower Act (FWA) for (1) retaliation in violation of the FCA, and (2) retaliation in violation of the FWA.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the United States District Court for the Southern District of Florida because the Plaintiff worked in, and the Defendant conducts business in, and some or all

1

of the events giving rise to Plaintiff's claims occurred in Broward County, Florida, which is within the Southern District of Florida. Venue is proper in the Fort Lauderdale Division under Local Rule 3.1 since Broward County is within the Fort Lauderdale Division.

**PARTIES**

5.      Plaintiff, **SCOTT KLAPHEKE** ("**KLAPHEKE**" or "Plaintiff") is an individual who is domiciled in Broward County, Florida and was employed by the Defendant in Broward County, Florida.

6.      Defendant is a Florida corporation and employed the Plaintiff in Broward County, Florida. The Defendant is a private company that touts itself as having developed "advanced cancer screening technology [that] utilizes rapid in situ hybridization and DNA fluorescent probes, offering comprehensive cancer screening with high accuracy. Our approach includes a rapid SITU Hybridization Platform, DNA Fluorescent Probes for ploidy detection, and inexpensive density gradient and low sequential centrifugation, which enable comprehensive screening for aneuploidy of all chromosomes." The Defendant holds itself out as being an affordable alternative because "[d]etecting cancer can be challenging due to limited existing screening tests, long turnaround times, high costs, and invasive procedures. OncoSure's innovative technology allows for early detection, even at stage -1, and provides crucial information for guiding further imaging tests with our detailed Oncosome count." The Defendant receives millions of dollars of annual income through government programs such as Medicare and Medicaid. The Defendant employs in excess of 10 employees and is an employer under the FCA and FWA.

**GENERAL ALLEGATIONS**

7.      The Plaintiff began his employment with the Defendant on or about March 4, 2025 and was employed as the Defendant's Vice President of Business Development and External Sales.

8. The Plaintiff performed his assigned duties in a professional manner and was very well qualified for his position.

9. However, the Plaintiff quickly witnessed fraudulent schemes perpetrated by OncoSure and its leadership encompassed multiple layers of deception designed to profit from false cancer diagnoses while billing Medicare, Medicaid, and approximately 20 other insurance providers.

10. From his first day on the job, he encountered serious concerns about the Defendant's legitimacy when a contracted sales firm, South Florida Consulting, raised questions about the Oncosure test's validity and clinical oversight.

11. The Plaintiff investigated further and discovered that the Defendant was utilizing false credentials and engaging in gross misrepresentation in advertising the Oncosure test and touting is efficacy and reliability.

12. At the core of the scheme was the deliberate misrepresentation of medical credentials and expertise. The Defendant's leadership, specifically Jason Andrew Vitulano (operating under the alias Jason Andrews), presented Jamar Hudson as their chief scientist with prestigious credentials from Columbia and Princeton. In reality, Hudson's only verifiable education was an online degree from Walden University.

13. The Defendant further fabricated the existence of "Dr. Ramesh Babu," whom it claimed developed the OncoSure test and authored clinical studies. Investigation revealed that the company associated with Dr. Babu, InteGen LLC, was actually owned by a different individual named Ramesh Vallahaneni, suggesting the entire foundation of the test's development was fraudulent.

14.     To maintain the appearance of legitimacy and secure necessary clinical licenses, The Defendant engaged in credential fraud through Kaela Vitulano, Jason Vitulano's wife. Despite being only 24-years old with a background as a Hooters waitress, she was listed as a molecular genetic pathologist licensed in Florida. This licensing would have been impossible given her age, as the profession requires 13+ years of education and post-graduate training. The company used these fraudulent credentials to obtain a CLIA license necessary for conducting FISH tests.

15.     Perhaps even more concerning was that the Plaintiff discovered that the Defendant was fraudulently reporting the results and efficacy of the Oncosure test, as evidenced by multiple documented instances of healthy individuals receiving results indicating advanced-stage cancer.

16.     More specifically, the test produced widespread false positives, including for on the Plaintiff's healthy 21-year-old son, who received results indicating advanced-stage cancer despite being in excellent health and having normal blood work from his family doctor. The Defendant's Operations Manager Tahlia Sadati reported that all tests from one week showed positive results for advanced cancer. And sales representative Tom Hollins reported that his first five patients all received high results, and two directors from South Florida Consulting also received false positive results.

17.     The Defendant's leadership actively worked to conceal these fraudulent practices. As described below, when questioned about the test's validity, they repeatedly promised but never produced eight claimed clinical studies. When confronted with contradictions about the test's methodology, particularly regarding whether it detected bacteria, the leadership provided conflicting explanations and attempted to silence those who raised concerns.

18.     To facilitate billing fraud, the Defendant employed a biller in Arizona who used an old FISH Technology PLA code to fraudulently process claims through Medicare, Medicaid, and other insurance providers.

19.     On March 7, 2025, the Plaintiff made an internal report regarding the foregoing to Jason Andrews questioning the pathologist's credentials. And on March 13, 2025, the Plaintiff made a second inquiry about the pathologist's credentials. However, the Defendant did not provide any substantive information to explain the discrepancies.

20.     On March 24, 2025, the Plaintiff requested the Defendant provide the promised clinical studies validating the test. However, the Defendant did not provide them.

21.     On March 31, 2025, the Plaintiff made a third inquiry about the pathologist, coupled with another request for clinical studies. Both requests were ignored by the Defendant.

22.     Just one week before his termination, the Plaintiff objected to and reported contradictory claims about the test's methodology after Sean Clark, an owner of Defendant, claimed it detected bacteria, which contradicted the supposed pathologist's explanation.

23.     On April 10, 2025, the Plaintiff made a final objection and internal report regarding widespread false positives, concerns about test legitimacy and the false representations the Defendant was using to effectuate sales and fraudulently receive payment from government healthcare programs. The Plaintiff specifically complained of the misconduct described above in and tried to put a stop to the illegal conduct, including the fraud being committed upon the government.

24.     The Defendant, fearing a possible *qui tam* action, then retaliated by immediately terminating the Plaintiff the very next day – April 11, 2025 – just one day after his final report

about false positives, test legitimacy concerns, and the false representations the Defendant was using to effectuate sales and receive payment from government healthcare programs.

25. The termination occurred during one of the Defendant's highest-performing sales weeks under Plaintiff's leadership, indicating performance was not the issue.

26. As a direct and proximate result of objecting to and engaging in statutorily protected activity regarding the Defendant's violations of law, which included the Defendant's fraudulent schemes to obtain, use and retain government monies, the Defendant subjected the Plaintiff to adverse employment action, to wit: his termination.

## COUNT I – VIOLATION OF VIOLATION OF 31 U.S.C. § 3730(h): RETALIATION

27. Plaintiff incorporates by reference Paragraphs 1-26 of this Complaint as though fully set forth below.

28. The Plaintiff, an employee, believed in good faith, and a reasonable employee in the same or similar circumstances would also believe, that Defendant was committing a fraud upon federal government agencies and other private entities.

29. Defendant was aware of Plaintiff's objections to the Defendant's illegal conduct.

30. Immediately thereafter, Plaintiff began to receive a hostile work environment, and adverse employment action.

31. Immediately after objecting to Defendant's misdeeds, Plaintiff began to be subjected to retaliation.

32. Pursuant to 31 U.S.C. § 3730(h) of the False Claims Act (hereinafter "FCA"), any employee who is discharged, demoted, suspended, threatened, harassed and otherwise discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done under the FCA is entitled to all relief necessary to make the employee whole.

33.     The purpose of the FCA, as explained in the Senate report accompanying the 1986 amendments to the FCA, states that Congress added a retaliation provision to the FCA "to halt companies… from using the threat of economic retaliation to silence 'whistleblowers'" and to "assure those who may be considering exposing fraud that they are legally protected from retaliatory acts." S. Rep. No. 99-345, at 34 (1986), U.S. Code Cong. & Admin News 1986, at 5266, 5299.

34.     Defendant began its negative employment actions against Plaintiff and ultimately did discharge him from his position for reasons contrary to public policy, as set out in 31 U.S.C. § 3730(h) and without just cause.

35.     Defendant, in discharging, suspending, demoting, threatening, disciplining and harassing Plaintiff in and from his employment, retaliated and discriminated against him because of complaints and concerns raised by him to Defendant.

36.     The acts of Defendant in demoting, suspending, threatening, disciplining, harassing, discriminating, and retaliating against Plaintiff, including but not limited to the wrongful discharge of employment, adverse employment actions, denial of true and correct performance appraisals, demotion and termination of Plaintiff by Defendant violated the provisions of 31 U.S.C. § 3730(h).

37.     Following Plaintiff's objection to Defendant's misappropriation and illegal retention of federal funds, Defendant has discriminated, suspended, demoted, threatened, disciplined, harassed and retaliated against Plaintiff for lawful conduct protected under the FCA.

38.     Defendant has terminated, discharged, suspended, threatened, disciplined, harassed, and discriminated against Plaintiff in his employment in violation of 31 U.S.C. § 3730(h).

39.     Defendant has discriminated and retaliated against Plaintiff for lawful and protected conduct in connection with his objection to and attempts to stop fraud, investigation of the fraud, potential testimony concerning, and assistance in an action filed or to be filed under the FCA, 31 U.S.C. § 3729 et seq.

40.     Plaintiff is entitled to all relief necessary to make him whole, including reinstatement with the same seniority status that he would have had but for the discrimination and two times the amount of back pay.

41.     Plaintiff, pursuant to 31 U.S.C. § 3730(h), is entitled to litigation costs and all reasonable attorneys' fees incurred in connection with this action.

42.     Plaintiff's conduct, including but not limited to investigating Defendant's misappropriation and retention of federal funds, and also raising complaints concerning same and bearing witness to violations of same, potential testimony concerning, potential initiation of and assistance in an action filed or potentially to be filed pertaining to the FCA, is all protected conduct under the FCA.

43.     Defendant knew that Plaintiff was engaged in protected conduct as referenced herein.

44.     Defendant discharged, terminated, demoted, suspended, threatened, disciplined and harassed Plaintiff from his employment and after his employment, and otherwise discriminated against him because of his protected conduct.

45.     As a direct and proximate result of the violations of 31 U.S.C. § 3730(h) as referenced and cited herein, Plaintiff has lost all the benefits and privileges of his employment and has been substantially and significantly injured in his career path that was anticipated from his employment.

46.     As a direct and proximate result of the violations of 31 U.S.C. § 3730(h) as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against him, Plaintiff is entitled to all relief necessary to make him whole.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

ii.     Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii.    Double back pay;

iv.     Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

v.      Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

vi.     Reasonable attorney's fees plus costs;

vii.    Compensatory damages, and;

viii.   Such other relief as this Court shall deem appropriate.

## COUNT II –VIOLATION OF FLORIDA STATUTE 448.102: FLORIDA'S PRIVATE WHISTLEBLOWER ACT

47.     Plaintiff incorporates by reference Paragraphs 1-26 of this Complaint as though fully set forth below.

48.     Plaintiff was an employee of the Defendant, a private company.

49.     At all material times, Plaintiff was to be protected from negative employment action by Florida Statute 448.102(1)-(3), commonly known as Florida's "whistleblower statute," which in relevant part provides:

9

"An employer may not take any retaliatory personnel action against an employee because the employee has:

(1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice;

(2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer, and;

(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."

50. Plaintiff did engage in statutorily protected activity by his objections and refusal to participate in the Defendant's illegal practices.

51. Immediately after engaging in statutorily protected activity, Plaintiff suffered negative employment action, his termination, which is a direct result of this statutorily protected activity.

52. Plaintiff's termination and his engaging in statutorily protected activity are causally related.

53. The Defendant knew that Plaintiff was engaged in protected conduct as referenced herein.

54. The Defendant discharged, terminated and retaliated against Plaintiff from his employment and after his employment, and otherwise retaliated against him because of his protected conduct.

10

55. As a direct and proximate result of the violations of F.S. § 448.102, as referenced and cited herein, Plaintiff has lost all of the benefits and privileges of his employment and has been substantially and significantly injured in his career path that was anticipated from his employment.

56. As a direct and proximate result of the violations of F.S. § 448.102, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against him, Plaintiff is entitled to all relief necessary to make him whole.

**WHEREFORE,** Plaintiff demands damages against Defendant for violation of Florida's Private Sector Whistle-blower's Act (Section 448.102, Fla. Stat.), including but not limited to all relief available under Section 448.103, Fla. Stat., such as:

(a) reinstatement of the employee to the same position held before the retaliatory personnel action, or to an equivalent position,

(b) reinstatement of full fringe benefits and seniority rights,

(c) compensation for lost wages, benefits, and other remuneration,

(d) any other compensatory damages allowable at law,

(e) attorney's fees, court costs and expenses, and

(f) such other relief this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States, the Plaintiff demands a trial by jury as to all issues triable as of right.

Respectfully submitted,

Dated: August 4, 2025

**/s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff
YORMAK EMPLOYMENT & DISABILITY LAW

11

27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com

12